(114 N. W. 472.)

---

### Ex Parte Bellamy.

Opinion filed Jan. 9, 1908.

**Larceny — Milling Corporation — Refusal to Deliver Grain.**

1. Petitioner, who was an officer of a milling corporation engaged solely in the manufacture of flour, is not guilty of larceny under section 2251, Rev. Codes 1905, for neglect or refusal to deliver on demand or to pay the market value of wheat delivered to such corporation by another.

**Same — Milling Concerns.**

2. Said section is construed, and *held* to apply only to such persons, associations, and corporations as are embraced within the purview of

section 2244, Rev. Codes, 1905, defining public warehousemen. This section by its terms expressly excepts from its operation milling concerns not doing a shipping business.

**Same—Evidence.**

3. The evidence before the committing magistrate disclosed that the milling corporation of which petitioner was an officer was not engaged in doing a shipping business. Therefore the commitment under which petitioner is held to answer for the offense of larceny as defined in section 2251, Rev. Codes 1905, aferosaid, is contrary to law and void, and the writ prayed for is granted.

(Syllabus by the court.)

Application by James Bellamy, Jr., for writ of habeas corpus.

Writ granted.

*Guy C. H. Corliss* and *Hawver & Warner,* for petitioner.

*M. Brynjolfson,* States Attorney of Pembina county, for respondent.

FISK, J.    The petitioner, James Bellamy, Jr., claiming to be unlawfully restrained of his liberty through a commitment issued by a committing magistrate at the conclusion of a preliminary examination holding him to the district court to answer to the charge of larceny, prays for a writ of habeas corpus. Application for such writ was first made to and denied by the judge of the district court of Pembina county. Counsel for petitioner and respondent have stipulated that the merits may be decided upon the application for the writ. Petitioner is accused of, and was committed for, the violation of section 2251, Rev. Codes 1905, which reads as follows: "Each person and each member of any association, firm or corporation doing a grain, warehouse or grain elevator business in this state, who shall, after demand, tender and offer as provided in the last section, wilfully neglect or refuse to deliver to the person making such demand, the full amount of grain of the grade, or the market value thereof, which such person is entitled to demand of such bailee, shall be guilty of larceny."

It is petitioner's contention, first, that said statute is void for uncertainty, for the reason that one of the ingredients of the crime therein defined is a willful neglect or refusal to deliver the grain "after demand, tender and offer as provided in the last section," and the preceding section makes no provision for any demand,

tender or offer; second, he contends that the evidence does not establish a willful neglect or refusal to deliver the grain within the meaning of said statute; third, it is contended that such statute, if intended to apply to a person who, through mere negligence, is rendered unable to comply with the demand for the delivery of the grain, without any mala fides on his part, the same is unconstitutional and void, for the reason, as claimed, that it would conflict with article 1 of section 15 of our constitution, which prohibits imprisonment for debt; and, fourth, that said section is a part of the article relating to public warehousemen, and that petitioner, who was an officer of a milling company not engaged in storing and shipping grain for profit, does not come within its purview. In disposing of the petition, we deem it unnecessary to consider the first three points urged by petitioner, the first of which impresses us with much force. We do not wish, however, to place our decision in this matter upon any ground which will nullify the statute, for, by so doing, we would violate a well-recognized rule of statutory construction which requires the decision to be placed upon other grounds when possible. We therefore withhold any expression of opinion upon petitioner's first point, nor do we deem it necessary to notice his second and third contentions. We are firmly convinced that petitioner's fourth contention is sound, and hence that the writ must issue.

Briefly stated, our reasons for this holding are as follows: The evidence discloses that the corporation of which petitioner was an officer was a corporation engaged merely in the business of purchasing wheat and manufacturing the same into flour for sale in the market. It was not, in other words, "doing a grain, warehouse or grain elevator business in this state," within the meaning of this statute. This is apparent from an examination of the act of which said section is a part. The statute was originally enacted as chapter 126, p. 321, Laws 1891, and, with the exception of an amendment in 1899 (page 195, c. 126) and another in 1901, (page 179, c. 140), to section 4, defining public warehouses, and in 1905 (page 217, c. 110) to section 7, relating to the form of storage receipts, the same remains unchanged, and is embraced in article 46 of chapter 24 of the Political Code, being sections 2241 to 2253 inclusive of the Revised Codes of 1905. Section 4 of the original act prescribed that "all buildings, elevators, or warehouses in this state, erected and operated or which may hereafter be erected and

operated by any person or persons, association, copartnership, corporation, or trust for the purpose of buying, selling, storing, shipping or handling grain for profit, are hereby declared public warehouses," etc. By chapter 126, Laws 1899, this section was amended to read as follows: "All buildings, elevators, warehouses or grist mills, except grist mills doing only a custom or exchange business, in this state, erected and operated, or which may hereafter be erected and operated, by any person, association, copartnership, corporation or trust, for the purpose of buying, selling, storing, grinding, shipping or handling grain for profit, are declared public warehouses," etc. Again in 1901, by chapter 140, page 179, this section, which is now section 2244, Rev. Codes 1905, was amended and re-enacted to read as follows: "All buildings, elevators, warehouses, and all grist and flour mills doing a shipping business in this state, erected or which may hereafter be erected or operated and operated by any person * * * * for the purpose of buying, selling, storing, shipping or handling grain for profit, are declared public warehouses," etc. It is therefore quite apparent that the legislature in 1899 construed the original section as not applying to milling concerns of any kind; and, in order to include within its provisions all milling concerns not doing merely a custom or exchange business, the amendment in that year was made. It is equally apparent that by the 1901 amendment it was the legislative intent to include within the provisions of said section only such milling concerns as may be engaged in doing a shipping business. We think the words "engaged in doing a shipping business," as used in the statute, were intended to mean engaged in shipping grain to terminal points, received by customers, in like manner in which elevator companies are thus engaged in doing a shipping business. That the corporation of which the petitioner was an officer does not come within the scope of such section as last amended is, we think, too plain for discussion. The evidence shows that the corporation was engaged in operating a flour mill only, and was not doing a shipping business within the meaning of said section, and we are entirely clear that section 2251, under which petitioner was held to answer for the crime of larceny, relates only to persons, associations, copartnerships, and corporations engaged in the business mentioned in section 2244. The statute in question, when construed as a whole, was evidently designed to create the relation of bailor and bailee between persons

delivering and receiving grain for storage and shipment, and to make such bailees who willfully neglect or refuse to deliver on demand the grain thus bailed, or its equivalent, guilty of larceny. It was not intended to apply to persons engaged strictly in the milling business. The very nature of such business is wholly inconsistent with the theory of a bailment of the wheat delivered at such mill. A person delivering wheat to a milling concern which is known to be engaged solely in manufacturing such grain into flour must be held to have parted with the title thereto, especially after such wheat has been manufactured into flour, and such flour disposed of in the market. And if, in fact, the milling concern was not engaged in doing a shipping business, and hence it is not included within said statute, it is immaterial that such fact was unknown to the person delivering such grain, or that he delivered the same under the belief that such milling concern was engaged in shipping grain for profit; nor, so far as the question here involved is concerned, is it material that upon the delivery of such grain the usual warehouse receipts or tickets were issued and delivered to the person delivering the same. A criminal statute cannot by contract or estoppel be made to include persons not intended by the legislature to be included within its terms. As before stated, it was the legislative intent to make it a public offense for any bailee coming within the statutory definition of a public warehouseman, who accepts grain of any kind for storage or shipment, to willfully neglect or refuse, on proper demand and payment or tender of proper charges, to deliver to the person making such demand the full amount of grain of the grade or the market value thereof which such person is entitled to demand. Manifestly it was not, and could not have been, the intent of the legislature to subject to a criminal charge persons, who, by the very nature of the business in which they are engaged, could not be expected to keep the same grain or any grain of the same grade or otherwise, so as to be able to redeliver the same on demand.

The evidence disclosing, as it does, that petitioner is not guilty of the crime with which he was charged, and is now held to answer under the commitment, it follows that his imprisonment is unlawful, and he is entitled to his liberty.

Writ granted. All concur.